UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAMIRO LOPEZ-IMITALO,

                    Petitioner,            10 Civ. 3228 (RPP)
                                                          S4 03 Cr. 294 (RPP)

      - against -

                                                      **OPINION AND ORDER**

UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On April 7, 2010, Petitioner Ramiro Lopez-Imitalo, who was convicted in 2005 of conspiracy to import more than one kilogram or more of heroin into the United States and conspiracy to distribute one kilogram or more of heroin, filed a Petition pursuant to Title 28 United States Code Section 2255 to vacate his guilty plea and conviction on the grounds of ineffective assistance of counsel. The Petition was based on Petitioner's Affidavit dated March 31, 2010 which states in pertinent part:

"2) During the pre-trial preparation of my case, I was represented by attorney Louis R. Aidala during the change of plea and Thomas F. Dunn during the Fatico Hearing.[1]

"3) Prior to providing my change of plea, I was always under the impression that my sentence would be based on the mandatory minimum ten year term of incarceration relying on the Government's agreement not to pursue a 20 year minimum mandatory sentence.

"4) I was provided this assurance after my attorney advised me that my extradition treaty presented that I could not be sentenced to a term of life incarceration. I interpreted that to mean that the equivalent of a term of years of life incarceration could not be imposed as per the terms of the extradition agreement." (Affidavit of Ramiro Lopez-Imitalo at ¶¶ 2-4.)

---
[1] See United States v. Fatico, 579 F.2d 707 (2d Cir. 1978).

1

"7) Had my attorney taken the time to explain to me the possibility that my sentence would not be based on the number of years that would be the equivalent of life in jail, I would have never plead [sic] guilty and would have proceeded to trial."  (Id. at ¶ 7.)

The remainder of the Petitioner's application continues a similar recitation of allegations on Petitioner's second claim:

"12)   I was constantly advised by my attorneys that should a Fatico Hearing be required, that the Government would have to prove all the issues presented at the Fatico Hearing beyond a reasonable doubt.

"13)   I would have never provided a plea of guilt had I known that the Government can present hearsay statements and can merely allow individuals to present their version of testimony without proving the same beyond a reasonable doubt.  I just would not have pled guilty had that been explained to me by my prior attorneys Mr. Aidala or Mr. Dunn.

"14)   I would have proceeded to trial had I known that there was such a thing as 'preponderance of the evidence' proof at the Fatico hearing." (Id. at ¶¶ 12-14.)

The third claim of ineffective assistance of counsel is set forth in counsel's Memorandum of Law and asserts that the service of Petitioner's third lawyer, Mr. Delgado, constituted ineffective assistance of counsel because he "fail[ed] to follow up on a request to open the Fatico hearing after being invited by the Court."  (Pet.'s Mem. of Law at 18.)

## DISCUSSION

Petitioner's first two contentions are rejected because the transcript of the plea allocution demonstrates that the statements made on the record by the Court, Petitioner's own attorney, and the prosecuting attorney, with a court certified interpreter present, made abundantly clear that the

2

Petitioner's present claims are not credible, and are based on after-the-fact rationalizations or deliberate falsehoods.

### Petitioner's First and Second Claims of Ineffective Assistance of Counsel

On March 15, 2005, Petitioner entered a plea of guilty to two counts of the indictment, charging him and Orlando Flores with participating in a conspiracy to possess with intent to distribute one kilogram and more of heroin and also conspiracy to import into the United States one kilogram and more of heroin. At the outset of the hearing, Petitioner acknowledged that he understood the court certified Spanish interpreter clearly. (March 15, 2005 Plea, Tr. at 2.) His attorney, Louis Aidala, Esq. added that he had "used this interpreter earlier this morning" and "had spent yesterday afternoon with another interpreter with Mr. Imitalo and I think based on his responses to my questions that he understood me and understood the translation from the various interpreters." (Id. at 2.)

Mr. Aidala then stated that, the day before the hearing, the government had decided to withdraw its contention that a 20 year mandatory minimum sentence applied because a courier died as a result of a heroin capsule bursting in his stomach (id. at 2-3) and that, as a result of that withdrawal, the Petitioner "will be" facing a 10 year mandatory minimum sentence. (Id. at 3.) Mr. Aidala then stated that there was no plea agreement between the parties but that the previous day the government had provided him with a Pimentel letter which he had had an interpreter "yesterday translate…in its entirety for Mr. Lopez-Imitalo."[2]  (Id. at4.)

---

[2] See United States v. Pimentel, 932 F.2d 1029 (2d Cir.1991)

In the Pimentel letter dated March 14, 2005, the Government stated the maximum sentence under the statute was life imprisonment; the Guideline Offense Level was 48, and based on Petitioner's Criminal History Category of I, his sentencing range was life imprisonment (March 14, 2005 Pimentel Letter at 3.)  It also states: "However, because the Defendant was extradited from Colombia, in the interest of comity, the Government expects to seek a sentence of sixty years" (Id. at 3.)

The government stated that "[a]s reflected in our Pimentel [letter]…we will prove a sentence well above 20 years is appropriate."  (March 15, 2006 Plea, Tr. at 6.)

Prior to hearing the Petitioner's allocution, the Court indicated that, although it had not decided Mr. Aidala's motion asserting that the 20 year mandatory minimum was inapplicable, it had planned to require the government to show that Congress intended that the 20 year mandatory minimum apply to the situation where a courier of Petitioner's died from having a heroin capsule burst in his stomach.  (Id. at 6-7.)

Thereafter, the Petitioner was sworn in (Id. at 7.) and the plea allocution commenced. Soon this Court brought up the Pimentel Letter. (Id. at 8.)

| | |
|---|---|
| The Court: | And have you had trouble in understanding the Pimentel Letter that Mr. Aidala has referred to here and has been read to you in Spanish? [3] |
| Mr. Aidala: | May I explain that is what the interpreter interpreted for him yesterday at the end of the session. |
| The Court: | Yes? |
| The Defendant: | Yes. |
| The Court | Did you have trouble understanding that letter? |

---

[3] A copy of the Pimentel Letter from the Court's Chamber's file is attached hereto.

4

| | |
|---|---|
| The Defendant: | No. |
| The Court: | So you think you've been able to understand it, everything that's been going on here with the aid of an interpreter? |
| The Defendant: | Yes, Sir.  (Id. at 9) |
| The Court: | Are you fully satisfied with Mr. Aidala as your lawyer and with the representation and legal advice he's given you in this case? |
| The Defendant: | Yes, Sir. |
| The Court: | Has anyone made any promise to you or assurance to you of any kind in an effort to get you to enter a plea of guilty in this case? |
| The Defendant: | No, Sir.  (Id. at 10) |

At the Court's request, the Government then advised Petitioner that if he pled guilty, the statute provided that he could receive a maximum sentence of life imprisonment and a mandatory minimum of ten years (Id. at 11.)  The Court then asked the Petitioner if he understood that "this statute provides that you could receive a sentence of as much as life imprisonment to be followed by supervised release for life and a fine of $4 million and a special assessment $100," to which he answered: "Yes, Sir." (Id. at 11.)

The Court then asked if Petitioner understood that the statute also provides that the Court must sentence him to at least 10 years in jail to be followed by at least five years of supervised release, to which he responded: "Okay, yes sir."  (Id. at 11.)

The Court inquired also whether the Petitioner was "aware that the United States Sentencing Commission had issued guidelines for judges to follow in determining a sentence in a criminal case," to which Petitioner responded "Yes, sir." (Id. at 12.)  The Court then asked "whether Mr. Aidala advised you as to how the guidelines might apply in your case."  (Id. at 12.)

5

Petitioner replied "Yes, sir, we have talked about that." (Id.) The Court then asked "Has he explained to you as to how the guidelines might apply in your case?" At that point, Mr. Aidala interrupted to state: "Judge, I don't know whether I informed him that there was recent case law, it's now advisory and the only thing that's mandatory of course is the statutory mandatory and clearly the Pimentel Letter made clear what the government's position is as to the guidelines but it is advisory and it's up to your Honor." (Id. at 12-13.)[4]

The Court inquired whether Petitioner understood that and Petitioner responded: "Yes, Sir." (Id. at 13.)

The Court then inquired whether the Pimentel Letter had been read to the Petitioner by the interpreter to which he answered: "Yes, Sir." (Id.)

| | |
|---|---|
| The Court: | And you understand that in connection with the sentencing, that there would have to be a hearing at which the government would have to offer proof with respect to various of its claims, particularly, those claims that you don't allocute or don't admit at the time of sentencing? |
| The Defendant: | Yes, Sir. |
| The Court: | Do you understand that? |
| The Defendant: | Yes, of course. |
| The Court: | And do you understand that that hearing would be conducted before me and I would have to determine by a preponderance of the evidence; that is, that there is more evidence supporting the government's claim then there is evidence against it, that each of |

---

[4] The Pimentel Letter stated the government would request a sentence of 60 years.

6

|                  |                                                            |
|------------------|------------------------------------------------------------|
|                  | these elements they seek to add to the sentence have been proved. Do you understand I'd have to make a finding with respect to each of these elements? |
| The Defendant:   | Yes, Sir.                                                  |
| The Court        | And you consent to that?                                   |
| The Defendant:   | Yes, Sir.  (Id. at 13-14.)                                 |

At this point, Mr. Aidala stood up and stated that, after Apprendi v. State of New Jersey, 530 U.S. 466 (2000), and the cases that followed it, the law was not fully clear that standard of proof required would not be the "beyond a reasonable doubt" standard instead of the "preponderance of the evidence" standard, and that he did not want the Petitioner to be waiving any possible right to the higher standard of proof.  (Id. at 14)  Mr. Aidala concluded "[t]hat's the only reason I'm standing up, so that it's not determined he's waived anything.  If it turns out that this real standard has to be beyond a reasonable doubt and that [sic] [not] preponderance of the evidence and that he hasn't waived that, Judge."  (Id. at 15.)

The Court then summarized the charges to Petitioner in the two counts of the indictment and explained that in order to hold Petitioner guilty, the Government must prove, beyond a reasonable doubt to the unanimous satisfaction of twelve citizens of the United States who are not connected with the Government, each of the essential elements of each crime.  (Id. at 19-25.)  Thereafter, Petitioner admitted to the essential elements of Count 1 and that the amount to be distributed in the United States was over 1 kilogram of heroin.  (Id. 19-22.)  Petitioner then also admitted the essential elements of Count 2 and stated "yes, in accordance with the conspiracy, more than a kilo was imported."  (Id. at 24.)  When asked by the Court, "are you pleading guilty because you are in fact guilty and not for some other reason?"  He answered, "Your Honor, I do,

7

in fact, plead guilty because I am guilty of the conspiracy to import more than a kilo of heroin into the United States and I don't want to lie to you." (Id. at 25.) The Court then set a date for a hearing for proof with respect to the sentencing enhancements which the Petitioner had not yet admitted. (Id. at 26.)

Accordingly, it is abundantly clear that the Petitioner was advised in Court, with no dissent by his attorney, that the statute provided for a maximum sentence of life, that the Government would press for a sentence of sixty years, and that at the Fatico hearing, each of the sentence enhancements sought by the Government would be determined by the Court based on the preponderance of the evidence standard. It was also made clear to Petitioner that Mr. Aidala agreed that, at that time, the law provided that the Court should make its findings based on the preponderance of evidence standard and that Mr. Aidala's statements regarding the beyond a reasonable doubt standard were made merely to protect Petitioner in the event it was determined by the Supreme Court that the beyond a reasonable doubt standard should be required to support sentencing enhancements.

Under these circumstances, the Petitioner was clearly on notice, prior to his plea of guilty, that he faced a sentence of up to life imprisonment, and that the hearing and the sentencing enhancements applicable to him would be decided by the Court using a preponderance of the evidence standard.

It is appropriate to note that Booker had been decided in January 2005. See United States v. Booker, 543 U.S. 220 (2005). In United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005), the Second Circuit stated, in February 2005, that post Booker "the applicable Guidelines range is normally to be determined in the same manner [e.g. preponderance of the evidence standard] as

8

before Booker/Fan Fan," and that the Circuit Court recognized that District Courts retained "the traditional authority of a sentencing judge to find all the facts relevant to sentencing."

Thus, no reasonable trier of fact could find that, at the time he pleaded guilty to the two count indictment, Petitioner was relying on advice from Attorney Aidala that he would receive a mandatory minimum of ten years of imprisonment. Nor could a reasonable trier of fact find that at the time of his plea of guilty, Petitioner believed that a sentence to sixty years of imprisonment, as represented in the Government's Pimentel Letter, was contrary to the terms of Petitioner's extradition agreement. Petitioner was fully aware that the Pimentel letter stated that the Government, in light of the extradition agreement, was going to press for a sentence of 60 years, although it believed a life sentence was appropriate under the circumstances.

Accordingly, Petitioner's present claim that this Court's sentence of 40 years of imprisonment is violative of the extradition treaty provision against life imprisonment is not credible. Petitioner's claim that he would not have entered a plea of guilty had he understood that the court could sentence him to 40 years despite the terms of the extradition agreement is also not credible.

Petitioner was arrested in 2003. A 40 year sentence (with good time, 34 years) would lead to release in 2037 when petitioner would be 88 years of age.

As for Petitioner's claim of ineffective assistance of counsel by Mr. Dunn, Petitioner failed to show that he was prejudiced in any way by Mr. Dunn's representation which began on September 14, 2005. Mr. Dunn's representation of Petitioner began following a discovery of a potential conflict of interest for Mr. Aidala. After a Curcio hearing to evaluate the conflict, and

Petitioner's receiving advice from independent counsel Bennett Epstein, Petitioner decided new counsel would be appropriate.[5]

Mr. Dunn was then appointed and represented Petitioner at the Fatico Hearing on November 14-15, 2005. At that hearing, the Government offered a transcript of Ms. Escobar's prior testimony and Petitioner stated on the record that he wanted to hear Ms. Escobar in person. (Fatico Hearing Transcript ("Fatico Tr.") at 6-7.) Accordingly, Mr. Dunn called Ms. Escobar as a witness and attacked her credibility successfully forcing her to admit, among other things, that she had lied to the federal agents on previous occasions, and during her cooperation with the government, had not disclosed $500,000 she had accumulated in Venezuela. (Fatico Tr. at 250-266.) At the close of the hearing, Petitioner made his own decision and elected not to testify after consultation with Mr. Dunn. (Id. at 269.)

On December 22, 2005, Mr. Dunn submitted a memorandum opposing the Government's analysis of the evidence at the Fatico Hearing as not supporting the enhancements it sought by a preponderance of the evidence. On January 16, 2006, Petitioner, with a complete understanding that he had a right to present evidence and testify on his own behalf rebutting the evidence presented at the Fatico Hearing, made his own decision and elected not to testify and instead chose to present a written response as advised by Mr. Dunn.

On April 6, 2006, Attorney Delgado, who Petitioner privately retained, replaced Mr. Dunn. Mr. Dunn's advice not to testify did not prejudice Petitioner as Petitioner thereafter changed his mind and over the Government's strong objection was permitted to testify on May 26, 2006, in a reopened Fatico Hearing and respond to the Government's Fatico evidence.[6]

---

[5] See United States v. Curcio, 680 F.2d 881, 888 (2d Cir. 1982)

[6] As a final argument, Petitioner claims that he would not have pleaded guilty had he known that hearsay evidence would be allowed at the Fatico hearing. However, in neither the supporting Memorandum of Law or the Reply, does his counsel argue this point. In any event, the allegation would not bear on the

10

**Petitioner's Third Claim of Ineffective Assistance of Counsel**

Petitioner's third claim is that Attorney Delgado's service to Petitioner constituted ineffective assistance of counsel because he failed to have the Fatico Hearing reopened although permitted by the Court. (Petitioner's Brief at 2, 17.)

This claim is also completely fabricated. Attorney Delgado did get the Court to agree to reopen the Fatico Hearing on May 8, 2006, after Petitioner completed writing his 42-page letter to the Court. On May 18, 2006, Attorney Delgado asked that Petitioner's daughter testify on his behalf on a limited subject relating to certain testimony by Mrs. Escobar. (Conference, May 18, 2006, Tr. at 9-10.) His daughter was in Venezuela and she failed to get a visa, and also failed to prepare and submit an affidavit setting forth the nature of her testimony. (Sentencing Tr. at 19.) Accordingly, at sentencing on May 31, 2006 and when Petitioner testified on May 26, 2006, Petitioner's daughter was not available. Her unavailability to testify cannot constitute ineffective assistance of counsel.

In view of the limited nature of Petitioner's daughter's testimony and in view of the 14 month period that had elapsed since Petitioner's plea of guilty, the Court went ahead as scheduled on May 8, 2006 and sentenced Petitioner on May 31, 2006 making the necessary findings of fact on the enhancements. Delgado, having gotten the Court to reopen the Fatico hearing, cannot be found to have provided ineffective assistance, as argued by Petitioner's counsel, because Petitioner's daughter failed to appear during prior to May 31, 2010.

---

voluntariness of the Defendant's plea of guilty. United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) Conclusory and self-serving statements are generally insufficient to show prejudice in the context of guilty pleas. Id. at 322. There is no showing that at the time of the plea, Petitioner was aware of what constituted hearsay evidence. Here, Petitioner was a lifelong resident of Colombia with seven years of education. (Plea Tr. at 8.) The exclusionary Hearsay Rule, as it applies in the United States, is not applied in Latin American countries, which follow the civil law model. See Janeen Kerper, Trial Advocacy Lessons from Latin America, 74 Temp. L. Rev. 91 (2001). Hearsay evidence at the Fatico hearing consisted of post-arrest statements of couriers as to the supplier of the heroin they had transported and post arrest statements by a co-conspirator as to petitioner's actions during his torture, supported by photographs of the scars on his back.

11

IT IS SO ORDERED.

Dated: New York, New York
December 23 2010

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion faxed to:

*Counsel for Petitioner:*

Henry Eduardo Marines
Henry Marines
9485 S.W. 72nd Street
Suite A200
Miami, FL 33173
Tel.: (305) 412-4443
Fax: (305) 704-8217

*Counsel for Respondent:*

Marc P. Berger
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
Tel.: (212) 637-2200
Fax: (212) 637-0083



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*



*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 14, 2005

Louis R. Aidala, Esq.
597 Fifth Avenue, 9th Floor
New York, NY 10017

      Re: <u>United States v. Ramiro Lopez-Imitola</u>
          S/ 03 Cr. 294 (RPP)

Dear Mr. Aidala:

      Pursuant to the suggestion of the Court in <u>United States v. Pimentel</u>, 932 F.2d 1029, 1034 (2d Cir. 1991), this letter sets forth the present position of the Office of the United States Attorney for the Southern District of New York (the "Office") regarding the application of the Sentencing Guidelines to this case. Count One of the above-referenced indictment (the "Indictment") charges the defendant with conspiracy to distribute 1 kilogram and more of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), and 846. Count Two of the above referenced indictment charges the defendant with conspiracy to import one kilogram and more of heroin, in violation of Title 21, United States Code, Sections 812, 952, and 960(a)(1) & (b)(1)(A) and 963. The offenses charged in Counts One and Two of the Indictment each carries a maximum sentence of life imprisonment with a mandatory minimum term of imprisonment of ten years; a maximum term of supervised release of life, with a mandatory minimum term of supervised release of five years; a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(A) and Title 18, United States Code, Section 3571, of the greatest of $4 million, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; restitution to any victims of the offense; and a $100 special assessment. This analysis is set forth for informational purposes only, and forms no part of any plea agreement between the Office and Ramiro Lopez-Imitola.

10/2002

The Government presently believes the Sentencing Guidelines ("U.S.S.G.") apply to the Indictment as follows:

A. <u>Offense Level</u>

1. The defendant conspired to distribute and possess with intent to distribute at least 30 kilograms of heroin. Accordingly, pursuant to U.S.S.G. §§ 2D1.1(a)(3) and 2D1.1(c)(1), the base offense level is 38.

2. Because a dangerous weapon was a possessed in connection with the offense charged in the Indictment, pursuant to U.S.S.G. § 2D1.1(b)(1), the offense level is increased by 2 levels.

3. Because the defendant was an organizer or leader of criminal activity involving five or more participants, pursuant to U.S.S.G. § 2B1.1(a), the offense level is increased by 4 levels.

4. Because the defendant willfully attempted to obstruct and impede the administration of justice during the course of the investigation and prosecution of this offense, and the obstructive conduct related to this offense, a two-level increase in the offense level is warranted, pursuant to U.S.S.G. § 3C1.1.

5. Because a victim was forcibly restrained in the course of the offense, pursuant to U.S.S.G. § 3A1.3, a two level increase in the offense level is warranted.

6. Because the defendant engaged in conduct warranting an enhancement under U.S.S.G. § 3C1.1, no reduction in the offense level is warranted for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), Application Note 4.

7. In addition, the Government notifies the defense that it may seek an upward departure from the otherwise applicable Sentencing Guidelines level, pursuant to U.S.S.G. § 2D1.1, Application Note 16, because the offense involved more than 300 kilograms of heroin. In addition, upward departures may be warranted under U.S.S.G. § 5K2.1, because of the death of at least one courier, under U.S.S.G. § 5K2.4, since at least one person was taken hostage to facilitate the commission of the offense, and under U.S.S.G. § 5K2.8 because the defendant engaged in extreme conduct, such as the torture of a victim, the gratuitous infliction of injury and that prolonging of pain and

humiliation.

In accordance with the above, the applicable Guidelines offense level is 48, prior to any upward departure.

B.  Criminal History

Based upon the information now available to this Office (including representations by the defense), the defendant has no prior convictions. Accordingly, the defendant has no criminal history points, and his Criminal History Category is I.

C.  Sentencing Range

An offense level of 48 and a Criminal History Category of I yields a sentencing range of life imprisonment (Zone D). However, because the defendant was extradited from Colombia, in the interest of comity the Government expects to seek a sentence of sixty years, the maximum sentence currently avaialable under Colombian law. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 48, the applicable fine range is $25,000 to $4,000,000.

The foregoing Guidelines calculation is based on facts and information presently known to the Office. Nothing in this letter limits the right of this Office to change its position at any time as to the appropriate Guidelines calculation in this case, and to present to the sentencing Judge and/or Probation Department, either orally or in writing, any and all facts and arguments relevant to sentencing, to the defendant's sentencing range and/or offense level, and to the defendant's criminal history category, that are available to the Office at the time of sentencing. Nor does anything in this letter limit the right of this Office to take a position on any departure that may be suggested by the sentencing Judge, the Probation Department, or the defendant.

Further, this letter does not and cannot bind either the Court or the Probation Department, either as to questions of fact or as to the determination of the correct Guidelines to apply in this case. Instead, the sentence to be imposed upon the defendant is determined solely by the sentencing Judge. This Office cannot and does not make any promise or representation as to what sentence the defendant will receive.

Very truly yours,

DAVID N. KELLEY
United States Attorney

By: _____
NEIL M. BAROFSKY/MARC BERGER
Assistant United States Attorney
(212) 637-2333/2207